Joel G. Green
INTEGRITY LAW GROUP, PLLC
2033 Sixth Avenue, Suite 920
Seattle, Washington 98121
(206) 838-8118
jgreen@ilgseattle.com
JoelGreenLaw@gmail.com

Attorneys for: Andrew Seligman

HONORABLE TIMOTHY W. DORE
Chapter 7
Hearing Date: November 10, 2022
Hearing Time: 9:30 a.m.
Response Date: October 28, 2022
Courtroom: 8106

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
SEATTLE

In re:

Kat V. Nguyen,

    Debtor.

Case No.: 22-10340-TWD

SUPPLEMENTAL MEMORANDUM RE 11 U.S.C. SECTION 522(p)

Andrew Seligman ("Andrew"), a secured creditor herein, through the undersigned attorneys, files this supplemental memorandum as it relates to the applicability and effect of 11 USC § 522(p) to the facts of this case pursuant to this Court's Order of September 16, 2022 and the effect on the debtor's motion to avoid Andrew's recorded judgment lien and on Andrew's objection to the debtor's homestead exemption. See ECF No. 43.

    1.    Section 522(p)(1) provides a debtor selecting a State's exemption scheme, as here, "may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the proceeding that exceeds in the aggregate [in this case $170,350 because it was commenced before April 1, 2022] in value in—(D) real or personal property that the

SUPPLEMENTAL MEMORANDUM RE 11 U.S.C. SECTION 522(p) - 1

INTEGRITY LAW GROUP, PLLC
2033 SIXTH AVENUES, SUITE 920
SEATTLE, WASHINGTON 98121

debtor or dependent of the debtor claims as a homestead." The facts have established by the debtor's claimed homestead in her Covington, Washington house was acquired within 1215 days of the filing of her chapter 7 case. At first glance she is not eligible to take the Washington state homestead exemption.

    2.    However, Section 522(p)(2)(B) provides that "For purposes of paragraph (1), any amount of such interest transferred from a debtor's **previous principal residence (which was acquired prior to the beginning of such 1215-day period)** into the debtor's current residence, if the debtor's previous and current residences are located in the same State." [Emphasis added.] The facts have established that the debtor's previous principal residence located in Renton, Washington was also acquired by the debtor within that 1215-day period. Therefore, if the court determines that the debtor is entitled to a homestead (which we argue she is not), pursuant to the plain language of the statute, the debtor's homestead is limited to a maximum of $170,350. There is no provision that would permit the debtor to look back in time to a previous purchase. Section 522(p)(2)(B) clearly limits the look back However, Andrew has also objected to the entirety of the debtor's homestead exemption on the basis that it was obtained by fraud, in which case, the debtor has no homestead exemption. The US Supreme Court has held on numerous occasions that the preeminent canon of statutory interpretation requires a court to presume that a legislature says in a statute what it means and means in a statute what it says there. Any inquiry on meaning beings with the statutory text and ends there as well if the text of the statute is unambiguous. It is only when the statutory language is unclear that a court may look to legislative history for interpretation. When a statute is ambiguous other interpretative tools may be used, including an examination of the act's purpose and of its legislative history. Here, the statute is clear: when a homestead is claims in a house that was purchased within 1215-days of a bankruptcy filing, no homestead exemption exists under State law, unless the previous home was purchased

SUPPLEMENTAL MEMORANDUM RE 11 U.S.C. SECTION 522(p) - 2

INTEGRITY LAW GROUP, PLLC
2033 SIXTH AVENUES, SUITE 920
SEATTLE, WASHINGTON 98121

outside of the 1215-day period. Section 522(p)(2)(B) means that if the current and previous house in the same state were purchased within the 1215-day period, the debtor is not entitled to the State of Washington homestead exemption and is limited to the $170,350 federal exemption.

3. The only pleadings filed by the debtor to this point are declarations wherein the debtor claims that she used money obtained from the sale of the marital house to purchase her current residence, without any proof that she actually used funds derived from the sale of that house. Considering the Andrew Seligman declaration in support of his objection to the debtor's motion to avoid his judgment lien, the facts show that the debtor received a total of $2,678,500 from Andrew's divorce obligations and her whistleblower settlement of $1.98 million. Looking at her property Schedules there is no explanation of what happened to nearly $1,275,500 between October 2018 when the divorce was finalized, to the date of her bankruptcy filing. The debtor's Statement of Financial Affairs provides that she lost $450,000 to gambling, but she also cannot account for what happened to the $275,000 she received from Andrew from the divorce settlement that was deposited into her IRA. There are only two possible explanations for the differences: (1) the debtor is concealing property of the estate or (2) the debtor gambled away far more than $450,000 since October 2018.

4. The debtor received $292,500 from the sale of the marital house in May 2018. She purchased the Renton home on July 29, 2019 for $770,950, using a down payment of $677,536.98 on July 26, 2019. Thus, more than one year after she received the money from the marital house. Furthermore, it is important to understand that the debtor received her $1.98 million whistleblower settlement in October 2018. Considering her gambling habits and failure to account for at least $1,275,500, the debtor has failed to demonstrate that she used the proceeds from the sale of the marital house to purchase her Renton home, which was purchased within the 1215-day period, rather than proceeds from her whistleblower settlement. More likely than not, the funds from marital house were

SUPPLEMENTAL MEMORANDUM RE 11 U.S.C. SECTION 522(p) - 3

INTEGRITY LAW GROUP, PLLC
2033 SIXTH AVENUES, SUITE 920
SEATTLE, WASHINGTON 98121

Case 22-10340-TWD    Doc 57    Filed 10/28/22    Ent. 10/28/22 11:32:20    Pg. 3 of 6

gambled away before the purchase of the Renton home. Under Section 522(2)(B), the debtor has the burden of proof on this issue. None of the declarations she has filed in this case provides any such proof other than her unsupported statement. As an aside, the debtor held a 99% interest in this home, with the other 1% belonging to her son and his wife.

5. In addition, the debtor has failed to advise the court and her creditors that prior to the purchase of her Renton home, she had purchased an unimproved property from Trinity Land Company, L.L.C. on or about December 4, 2018. According to the Real Estate Excise Tax Affidavit, the unimproved land was purchased for $229,950. (See Exhibit A attached hereto, which the undersigned certifies is a true and correct copy of the Real Estate Excise Tax Affidavit found in the Records of King County.) The debtor held that property until June 12, 2020 when it was sold to Benjamin and Emma Jurecic for $238,000 according to the Real Estate Excise Tax Affidavit. (See Exhibit B attached hereto, which the undersigned certifies is a true and correct copy of the Real Estate Excise Tax Affidavit found in the Records of King County.) The source of those funds needs to be explained. If the debtor purchased the land with the proceeds of the sale of the marital home, she never filed a homestead exemption. Furthermore, she purchased the Renton home after she purchased the unimproved land. If the unimproved land was purchased with the proceeds from the marital house and not sold until June 2020, the debtor could not possibly have purchased her Renton home with proceeds other than her whistleblower settlement. The burden of proof is on the debtor to prove which funds were used to make which purchases and that has not yet been done. See Declaration of Joel G. Green filed herewith.

6. The debtor sold the Renton residence on June 7, 2021 and states that she used the equity from that sale to purchase the Covington residence, which she purchased on June 21, 2021. However, if the debtor used any of the proceeds from the sale of the unimproved property to purchase the

SUPPLEMENTAL MEMORANDUM RE 11 U.S.C. SECTION 522(p) - 4

INTEGRITY LAW GROUP, PLLC
2033 SIXTH AVENUES, SUITE 920
SEATTLE, WASHINGTON 98121

Covington home, those proceeds are not exempt. Any non-exempt funds used to purchase the Covington home are excluded from the debtor's interest. See *In re Rasmussen*, 349 B.R. 747 (Bankr. M.D. Fla. 2006). (Homestead value acquired by the debtor from money derived from the sale of even exempt assets, other than the prior homestead, is also not exempt.) See also *Parks v. Anderson*, 406 B.R. 79 (D. Kan. 2009). (Homeowner's transfer of non-exempt funds during the 1215-day period, for example, a bank account, into a homestead is not protected under Section 522(p).) Here, the debtor admitted that she used some whistleblower proceeds to purchase her home Renton home. Based upon *Anderson* the debtor has not rolled over equity from a prior homestead, and, therefore, the amount used from the whistleblower proceeds into the new homestead is not exempt.

7. The key is that the interest referred to in Section 522(p) is a monetary interest, not an ownership interest. See *Anderson, Id*.

8. Andrew believes that the debtor gambled away all the money she received out of the marital dissolution. There is evidence to suggest that is the case in light of the nearly $1.3 million in unaccounted monies.

9. Whether the debtor is entitled to claim the entire Washington State homestead exemption under Section 522(p)(2)(B) because she used equity she acquired in another homestead more than 1215 days before she declared bankruptcy to buy her current homestead raises issues that require an evidentiary hearing. *In re Meguerditchian*, 566 BR 102 (Bankr. E.D. Mass. (2017). However, as noted above, the debtor is not entitled to count equity from the marital community used to purchase the Renton home because the debtor is limited to the current and most previous home under Section 522(p), because both of them were purchased within the 125-day period.

10. In conclusion, the debtor has the burden of proof on all of these issues, and she has failed to meet that burden of proof. In order to prove her claims she would have to prove that she did

SUPPLEMENTAL MEMORANDUM RE 11 U.S.C. SECTION 522(p) - 5

**INTEGRITY LAW GROUP, PLLC**
2033 SIXTH AVENUES, SUITE 920
SEATTLE, WASHINGTON 98121

not gamble away the proceeds from the sale of the marital home. Since the $292,000 she received is more than the $677,536.98 down payment on the Renton home, under the *Anderson* case, at the difference of equity of $385,536.98 is not exempt. Any funds used from the sale of the unimproved land is likewise not exempt and to the extent funds from that sale were used to purchase the Covington home, an additional deduction needs to be made. In order to accurately account for the funds actually used an evidentiary hearing must be held.

DATED this 27th day of October 2022.

INTEGRITY LAW GROUP, PLLC

By: */s/ Joel Green*
    Joel G. Green, WSBA #8706

SUPPLEMENTAL MEMORANDUM RE 11 U.S.C. SECTION 522(p) - 6